**William J. RYAN, Petitioner, Appellant,**

v.

**Gayle M. RYAN, Respondent.**

**No. C5–86–508.**

Court of Appeals of Minnesota.

Sept. 30, 1986.

Jill I. Frieders, Kathleen M. Picotte-Newman, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, for appellant.

Thomas W. Pugh, South St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a judgment and decree of dissolution awarding respondent physical custody of the parties' minor child, subject to reasonable visitation. Appellant claims the trial court abused its discretion in awarding respondent physical custody and failing to order a structured visitation schedule. We affirm.

## FACTS

Appellant William J. Ryan and respondent Gayle M. Ryan were married in 1978. Their only child, Amanda, was born May 26, 1981. The parties lived together until January 23, 1983, when respondent and Amanda moved out of the family home. Appellant commenced a dissolution action on January 31, 1984.

On February 29, 1984, the parties appeared before the court on their respective motions for temporary relief. The parties were referred to Mark Thompson of the Dakota County Department of Court Services. After an evaluation, Mr. Thompson recommended that appellant be awarded temporary custody of Amanda. The court later issued its order for temporary relief awarding temporary custody to appellant,

subject to respondent's right of reasonable visitation.

Appellant had sole custody of Amanda under the temporary order for nine months, February through November 1984, when the parties agreed to a temporary joint custody schedule of alternating weeks. This schedule was utilized from November 1984 through issuance of the judgment and decree in December 1985.

Pursuant to a court order, the Dakota County Department of Court Services performed a custody study. The report recommended custody be awarded to respondent based on the opinion the child would have a better chance of having an ongoing relationship with both parents if placed in the custody of the mother.

A second custody evaluation was conducted by Dr. Jack Wallinga, a psychiatrist in both adult and child psychiatry, who was hired by appellant. His report recommended custody be awarded to appellant.

On November 15, 1985, a hearing was held on the issues of child custody, visitation and child support. The trial court concluded the parties would have joint legal custody of Amanda, with respondent maintaining physical custody, subject to reasonable visitation upon reasonable notice.

The trial court made several findings corresponding to the factors listed under Minn.Stat. § 518.17, subd. 1 (1984) in determining the best interests of the child. The court recognized in its memorandum, however, the uncertainty that comes with applying those factors when both parents seek custody of a child too young to express a preference. Citing *Pikula v. Pikula*, 374 N.W.2d 705 (Minn.1985), requiring the primary caretaker be awarded custody absent a showing of unfitness, the trial court stated:

> Petitioner and Respondent have shared equally in the daily care, nurturing and support of the child. Since neither parent has been the primary caretaker, no preference arises and the Court must limit its inquiry to other indicia of parental fitness.

The genuine concern and care provided by each parent makes the task of the Court enormously difficult. However, a decision must be made and the emotional and developmental needs of the child are best enhanced by awarding custody to the Respondent.

The best interests of a child must take into account the quality of the time spent with a child as well as the quantity. The quality of the time spent by the Respondent with the child reflects a better appreciation for the child's long term growth.

With respect to visitation, the trial court stated the weekly transfer arrangement seemed to work well, but both parties recognize the need for continuity of a single household as the child grows. In the court's order denying post-judgment relief the court further explained:

> Visitation should not be scheduled. This child's life should not, because it need not, be governed by an inflexible schedule or matrix of visitation dates. The nurturing that this child needs from *both* parents will come not from a scheduled quantity of time with each. It will come from an environment created by the parents who place the child's interests first, who sacrifice convenience for the satisfaction of doing what is right for the child only because it is right. Both, up to this point, have shown a considerable dedication to their daughter. A renewed commitment to Mandy, no matter the convenience, disappointments, frustrations or hurts of mother and dad, are going to far better serve all than any schedule this Court could fashion. Visitation should be guided by reasonableness.

## ISSUES

1. Did the trial court abuse its discretion by awarding physical custody of the minor child to respondent?

2. Did the trial court abuse its discretion by failing to order structured visitation?

## ANALYSIS

1. Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula,* 374 N.W.2d at 710. "The trial court's findings must be sustained unless clearly erroneous." *Id.*

"[T]he ultimate test in all custody cases is the best interests of the child." *Berndt v. Berndt,* 292 N.W.2d 1 (Minn.1980) (citing Minn.Stat. § 518.17, subd. 1 (1976)); *Rosenfeld v. Rosenfeld,* 311 Minn. 76, 83–84, 249 N.W.2d 168, 172 (1976).

> [W]hen both parents seek custody of a child too young to express a preference, and one parent has been the primary caretaker of the child, custody should be awarded to the primary caretaker absent a showing that that parent is unfit to be the custodian.
>
> \* \* \* \* \* \*
>
> When the facts demonstrate that responsibility for and performance of child care was shared by both parents in an entirely equal way, then no preference arises and the court must limit its inquiry to other indicia of parental fitness.

*Pikula,* 374 N.W.2d at 712–14.

■ Appellant argues the trial court abused its discretion in determining he was not the child's primary caretaker. For purposes of custody, "primary caregiver determination is governed by circumstances at the time the dissolution proceeding was commenced." *Brauer v. Brauer,* 384 N.W.2d 595, 597 (Minn.Ct.App.1986) (citing *Pikula,* 374 N.W.2d at 714).

■ At the time the dissolution proceeding commenced, appellant was working full time while respondent was working part time. Although appellant claims he was the primary care giver, there is no evidence indicating respondent failed to similarly care, nurture and provide daily needs during these early years of Amanda's life. The trial court specifically found both parents equally willing and able to provide love and affection and noted both parents have been very willing to put Amanda's interests ahead of their own. Finding neither parent the primary caretaker is supported by the evidence and not an abuse of discretion. *Pikula,* 374 N.W.2d at 713–14.

■ Appellant argues even if the trial court is justified in finding neither parent the primary caretaker, the award of custody to respondent is not in Amanda's best interests. Minn.Stat. § 518.17, subd. 1 outlines several factors in determining the best interests of the child:

> "The best interests of the child" means all relevant factors to be considered and evaluated by the court including:
>
> (a) The wishes of the child's parent or parents as to his custody;
>
> (b) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference;
>
> (c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;
>
> (d) The child's adjustment to his home, school, and community;
>
> (e) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
>
> (f) The permanence, as a family unit, of the existing or proposed custodial home;
>
> (g) The mental and physical health of all individuals involved;
>
> (h) The capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in his culture and religion or creed, if any; and
>
> (i) The child's cultural background.

The trial court made specific findings on eight of the nine factors, (a)–(h), relevant to the custody determination in this case. The findings indicate both parties are equally willing and able to care for Amanda. The trial court made the difficult decision of awarding custody to respondent based on the quality of time Amanda spent

with respondent, reflecting a better appreciation for the child's long term growth. "It is sufficient if the findings as a whole reflect that the trial court has taken statutory factors into consideration, in so far as they are relevant, in reaching its decision." *Rosenfeld*, 311 Minn. at 83, 249 N.W.2d at 172.

Appellant also claims the trial court erroneously failed to consider Dr. Wallinga's recommendation that custody be awarded to appellant. "The trial court is not, however, bound to adhere to such expert testimony if it believes it is outweighed by other evidence." *Pikula*, 374 N.W.2d at 710.

In the court services custody report, the evaluators found a notable difference in the parties' ability to cooperate for further visitation. They concluded the child would have a better chance of having an ongoing relationship with both parents if Amanda were placed in the custody of respondent. The parties concede the importance of Amanda's ongoing relationship with both parents. This evidence further supports the trial court's conclusion the emotional and developmental needs of the child are best enhanced by awarding custody to respondent. *See Berndt*, 292 N.W.2d at 2.

2. [T]he court shall, upon the request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a child to parent relationship that will be in the best interests of the child.

Minn.Stat. § 518.175, subd. 1 (1984). The statute's intent "is to allow a child to maintain a two parent relationship." *Clark v. Clark*, 346 N.W.2d 383, 385 (Minn.Ct.App. 1984), *pet. for rev. denied*, (Minn. June 12, 1984).

Appellant claims the trial court's order for reasonable visitation does not ensure appellant and Amanda will be allowed to maintain a child-parent relationship. Both parties stipulated to a structured visitation schedule contained in appellant's January 15, 1986 motion to amend judg-

ment. We agree, however, with the trial court's determination that the court need not oversee an inflexible visitation schedule in this case. The trial court's order for reasonable visitation is supported by the evidence and is not an abuse of discretion. *See Schultz v. Schultz*, 358 N.W.2d 136, 139 (Minn.Ct.App.1984).

### DECISION

The trial court did not abuse its discretion in awarding respondent physical custody of the parties' minor child subject to reasonable visitation.

Affirmed.