**In re the Marriage of Barry L. MOWERS, Petitioner, Respondent,**

v.

**Erin N. MOWERS, Appellant.**

**No. C2–86–2104.**

Court of Appeals of Minnesota.

May 26, 1987.

Douglas P. Anderson, Rosenmeier & Anderson, Little Falls, for respondent.

Jerry O. Brantner, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for appellant.

Considered and decided by POPOVICH, C.J., and HUSPENI and MULALLY,* JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a judgment denying a motion to transfer custody of the parties' seven-year-old child to appellant mother and awarding her only partial attorney fees. An October 29, 1984 dissolution decree granted respondent custody, but provided appellant could petition for a de novo custody determination after one year. Appellant claims the trial court abused its discretion because (1) appellant was child's primary caretaker, a fit custodian and entitled to custody, (2) the trial court improperly interviewed the child over appellant's objection, (3) the child was too young and improperly influenced to express a preference, (4) the court improperly failed to follow recommendations of an independent custody evaluator, and (5) appellant deserves her full amount of attorney fees. We affirm.

## FACTS

Appellant Erin N. Mowers and respondent Barry L. Mowers were married in December 1971 in Wahpeton, North Dakota. There the parties' daughter, Cinda, was born October 21, 1978. In December 1982, respondent moved to Little Falls, Minnesota to work as a corporate treasurer for Franciscan Sisters Healthcare Corporation. In May 1983, after appellant completed her teaching job in Wahpeton, she and Cinda joined respondent in Little Falls.

In June 1984, the parties stipulated to place temporary custody of Cinda with respondent and to dissolve their marriage the following August. On October 29, 1984, the stipulated terms were incorporated into the dissolution judgment and decree. The decree awarded joint legal custody to both parties and physical custody to respondent subject to appellant's liberal visitation rights. The decree further provided:

> At any time after one year from the date of judgment herein, if the parties cannot agree as to who should be the custodial parent, they can apply to this court for a de novo decision, following a hearing on the evidence of both the parties, in regard to physical custody. If custody is changed then, the noncustodial parent shall have all the rights set

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

forth concerning visitation described herein.

After the dissolution, appellant moved to Fargo, North Dakota and was employed as a school teacher. Respondent remarried in August 1985 and lives in the parties' home with Cinda, his current wife, her three children from a prior marriage, and one child from the current marriage.

On December 9, 1985, appellant petitioned for transfer of custody. At trial on August 27–29, 1986, the court initially announced its de novo determination would be based on the child custody factors of Minn.Stat. § 518.17 rather than the modification considerations of section 518.18.

On the first day of trial, the court requested an interview with Cinda in chambers that afternoon. Counsel waived their, and the court reporter's, presence to achieve a more informal and less intimidating setting. Regarding Cinda's activities immediately prior to trial, appellant's friend Bonnie Thompson testified she and Cinda watched TV together the night before trial and both ate breakfast with appellant that morning.

Appellant testified respondent physically forced her to sign the stipulation granting respondent custody. Further, she maintained respondent physically and verbally abused her throughout the marriage. Appellant's expert, Evonne Domyahm, a licensed psychologist treating appellant in Fargo since April 1985, testified in her opinion appellant was suffering from Battered Wife's Syndrome. The independent custody evaluator, Robert Franseen, accepted appellant's allegation respondent was a wife-batterer. Franseen is not a licensed psychologist, however, and made no formal diagnosis. Franseen believed respondent was less than credible, pathologically angry and had a low regard for females. In his custody evaluation report submitted prior to trial, he recommended appellant be awarded legal and physical custody of Cinda. Franseen interviewed the parties and Cinda individually and together.

Respondent denied appellant's allegations of abuse. Respondent's expert, Dr.

Hope Sampsel, a licensed psychologist employed by a hospital associated with Franciscan Healthcare, performed the necessary clinical observations and testified in her opinion respondent was not a wife-batterer.

Appellant further testified she was Cinda's primary caretaker throughout the marriage. Respondent testified, however, both parties shared equally in the parenting responsibilities. Respondent maintained appellant was primarily responsible for cooking, but in other aspects, such as putting Cinda to bed and arranging for her day care and transportation, he had the primary role. After the June 1984 stipulation awarding him custody, he assumed sole responsibility for Cinda.

Several other witnesses testified, including extended family, friends, respondent's employer, his current wife and Cinda's teachers. The testimony received on respondent's behalf indicated Cinda has integrated well into her new family environment. Franseen in his custody report agreed, stating "[i]t appears she is in the most stable environment, currently, that she has ever lived in."

Based on the court's interview with Cinda and the evidence presented, the court specifically found:

> The child prefers that she continue to live with her father, step-mother, step-siblings and her half sister; the child prefers that she continue to stay with her mother during the summer and that the present visitation schedule in all other respects remain the same. The child is fully able to make and express a preference.

In its attached memorandum, the court further stated:

> Under the circumstances of the instant case—a girl almost 8 years old who has lived with the father for two years and who expresses a preference—the "primary parent" concept is inapplicable.
>
> * * * The Court is satisfied that the child related her actual preference without prior coaching or persuading.

The court also found Cinda is well-adjusted in her present environment:

Prior to the father's remarriage, Cinda had appeared as an unhappy, withdrawn, timid, unsociable child; since the marriage and up to the present time, the child has had a desirable personality change; she appears happy, outgoing, a good mixer, and a well-adjusted child; a good share of the change is attributed to her new family relationship and the influence of her step-mother.

Regarding appellant's allegations of abuse, the court explained:

There has been testimony of physical violence between the parties and of sexual indiscretions. Unless these acts affect a party's relationship with the child, the Court cannot consider them. The Court finds that neither party has physically or sexually abused the child, and that the allegations, if proved, do not affect either party's relationship with the child. There is disputed testimony as to whether the mother is a battered wife and whether the father is a batterer. For the same reason, the Court finds the issue immaterial to the ultimate issue in the case. The mother offers the Battered Wife Syndrome as the reason she gave up the child for the first year after the dissolution. The Court is concerned only with the welfare of the child as of today and in the future.

The court also explained its consideration of the custody evaluation:

The Court's decision is not in accord with the recommendation of the Court-appointed social services investigator. The evidence presented at the trial does not support the conclusions reached by the investigator as to the character of the father. His assessment of the character of the father is the basis for his recommendation of change of custody. He believes the character defects of the father will adversely affect in the future the welfare of the daughter. The Court believes the known and present benefits of the girl's present environment must prevail over speculation based on the investigator's evaluation of the father's character.

The court made further findings regarding Cinda's best interests and concluded joint legal custody remain with both parents, physical custody remain with respondent, and appellant's present visitation rights remain unchanged. The court denied appellant's motion to transfer custody and partially granted her motion for attorney fees, awarding her $7000. That amount was later reduced to $6000 following respondent's motion for amended findings based on a lower gross income.

Appellant made no post-trial motions but appealed from the judgment entered September 11, 1986.

## ISSUES

1. Did the trial court abuse its discretion in declining to award appellant physical custody of the parties' seven-year-old child who preferred to remain with respondent?

2. Did the trial court abuse its discretion in awarding appellant only partial attorney fees?

## ANALYSIS

1. Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). "When examining the record, we must view the evidence in the light most favorable to the court's findings." *Rinker v. Rinker*, 358 N.W.2d 165, 167 (Minn.Ct.App.1984).

2. The guiding principle in all custody cases is the best interests of the child. *Berndt v. Berndt*, 292 N.W.2d 1, 2 (Minn. 1980) (citing Minn.Stat. § 518.17, subd. 1 (1976)).

[W]hen both parents seek custody of a child too young to express a preference, and one parent has been the primary caretaker of the child, custody should be awarded to the primary caretaker absent a showing that that parent is unfit to be the custodian.

*Pikula,* 374 N.W.2d at 712. Custody evaluations may be disregarded if outweighed by other evidence. *Id.,* at 710.

Appellant principally argues under *Pikula* she was Cinda's primary caretaker during the marriage and therefore is entitled to custody. The trial court properly concluded, however, the *Pikula* primary caretaker analysis applies when the child is "too young to express a preference." *Id.* at 712.

■ 3. Appellant claims Cinda, seven years and ten months old at the time of trial, is not of sufficient maturity and understanding to express a preference. Appellant argues the trial court erred in interviewing Cinda over her objection because Cinda previously indicated to the custody evaluator she wanted to live with both parents and Cinda was unable to express an unbiased preference because she was shopping for school clothes with respondent the night before the interview.

The record shows, however, appellant's counsel agreed to Cinda's interview by the court and waived his right to be present. Moreover, appellant's own witness, Bonnie Thompson, testified Cinda was staying with appellant, not respondent, immediately prior to trial. The trial court acted within its discretion in determining Cinda was of sufficient age to express her preference and did so without prior coaching or persuading. *See, e.g., Pekarek v. Pekarek,* 384 N.W.2d 493, 498 (Minn.Ct.App.1986) (eight-year-old child deemed sufficient age to express custodial preference).

■ 4. Appellant further argues the trial court erred in refusing to follow the custody evaluator's recommendation custody be transferred to appellant. The record supports, however, the court's finding the evaluator's recommendation was outweighed by other evidence. Ample evidence was received, including the custody evaluator's own observations, which indicate Cinda was well-adjusted and happy in her current home. In view of Cinda's preference and the evidence presented, the trial court did not abuse its discretion in concluding Cinda's best interests are served by awarding respondent physical custody.

5. Allowance of attorney fees in dissolution cases rests almost entirely in the discretion of the trial court. An award should not be disturbed absent clear abuse of discretion.

*Kirby v. Kirby,* 348 N.W.2d 392, 394 (Minn. Ct.App.1984).

■ Appellant claims the trial court abused its discretion by awarding her only $6000 attorney fees rather than the $21,000 requested. Given the trial court's broad discretion in this matter, the award was reasonable and not an abuse of discretion.

## DECISION

Based on the child's preference and the evidence presented, the record supports the trial court's determination custody remain with respondent father. The trial court did not abuse its discretion by not awarding appellant the total amount of requested attorney fees.

Affirmed.